MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ADAN ESTEBAN MEDELLIN, FERNANDO
MEJIA, and MOISES PEREZ AGUIRRE,
*individually and on behalf of others similarly*
*situated,*

                              *Plaintiffs*,

                 -against-

FLEET DESIGN INC.  (D/B/A FLEET
DESIGNS), ISSAC FISCH , YITZCHOK A
FISCH (AKA MR. HISCO) , and JOHN DOE
(AKA MR. FISHY),

                            *Defendants.*

-------------------------------------------------------X

                 **Index No. 18-cv-00241 (MKB) (JO)**

                 **FIRST AMENDED COMPLAINT**

                 **COLLECTIVE ACTION UNDER**
                 **29 U.S.C. § 216(b)**

                 **ECF Case**

       Plaintiffs Adan Esteban Medellin, Fernando Mejia, and Moises Perez Aguirre , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Fleet Design Inc. (d/b/a Fleet Designs), ("Defendant Corporation"), Issac Fisch,  Yitzchok A Fisch (aka Mr. Hisco), and  John Doe (aka Mr. Fishy), ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

### NATURE OF ACTION

       1.     Plaintiffs are former employees of Defendants Fleet Design Inc. (d/b/a Fleet Designs), Issac Fisch, Yitzchok A Fisch (aka Mr. Hisco), and John Doe (aka Mr. Fishy).

2.      Defendants own, operate, or control a construction company, located at 50 Taaffe Place, Brooklyn, NY 11205 under the name "Fleet Designs".

3.      Upon information and belief, individual Defendants Issac Fisch, Yitzchok A Fisch (aka Mr. Hisco), and John Doe (aka Mr. Fishy), serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the construction company as a joint or unified enterprise.

4.      Plaintiffs were employees of Defendants.

5.      Plaintiffs were employed as construction workers and ceramic/tiles installers at the construction company located at 50 Taaffe Place, Brooklyn, NY 11205.

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of

1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a construction company, located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

14.    Plaintiff Adan Esteban Medellin ("Plaintiff Medellin" or "Mr. Medellin") is an adult individual residing in New York County, New York. Plaintiff Medellin was employed by Defendants at Fleet Designs from approximately October 2005 until on or about October 10, 2016.

15.    Plaintiff Fernando Mejia ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in Bronx County, New York. Plaintiff Mejia was employed by Defendants at Fleet Designs from approximately September 2016 until on or about December 25, 2017.

16.     Plaintiff Moises Perez Aguirre ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Bronx County, New York. Plaintiff Perez was employed by Defendants at Fleet Designs from approximately October 2013 until on or about December 25, 2017.

*Defendants*

17.     At all relevant times, Defendants owned, operated, or controlled a construction company, located at 50 Taaffe Place, Brooklyn, NY 11205 under the name "Fleet Designs".

18.     Upon information and belief, Fleet Design Inc. (d/b/a Fleet Designs) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 50 Taaffe Place, Brooklyn, NY 11205.

19.     Defendant Issac Fisch is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Issac Fisch is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Issac Fisch possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

20.     Defendant Yitzchok A Fisch (aka Mr. Hisco) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Yitzchok A Fisch (aka Mr. Hisco) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Yitzchok A Fisch (aka Mr. Hisco) possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees

of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

21.     Defendant John Doe (aka Mr. Fishy) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant John Doe (aka Mr. Fishy) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant John Doe (aka Mr. Fishy) possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

22.     Defendants operate a construction company located in the Bedford-Stuyvesant neighborhood in Brooklyn.

23.     Individual Defendants, Issac Fisch, Yitzchok A Fisch (aka Mr. Hisco), and John Doe (aka Mr. Fishy), possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

24.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

25.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

26.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

27.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

28.     Upon information and belief, Individual Defendants Issac Fisch, Yitzchok A Fisch (aka Mr. Hisco), and John Doe (aka Mr. Fishy) operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

29.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

30.     In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

31.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction company on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

32.     Plaintiffs are former employees of Defendants who were employed as construction workers and ceramic/tiles installers.

33.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Adan Esteban Medellin*

34.     Plaintiff Medellin was employed by Defendants from approximately October 2005 until on or about October 10, 2016.

35.     Defendants employed Plaintiff Medellin as a construction worker and ceramic/tiles installer.

36.     Plaintiff Medellin regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

37.     Plaintiff Medellin's work duties required neither discretion nor independent judgment.

38.     Throughout his employment with Defendants, Plaintiff Medellin regularly worked in excess of 40 hours per week.

39.     From approximately January 2012 until on or about October 10, 2016, Plaintiff Medellin worked as a construction worker and ceramic/tiles installer from approximately 8:00 a.m. until on or about 5:00 p.m., three days a week and from approximately 8:00 a.m. until on or about 8:00 p.m. two days a week (typically 48.5 hours per week).

40.     Medellin did not work this exact schedule every single week.  There were weeks when his schedule differed.  For example, Medellin did not work on some federal holidays and some Jewish holidays.  Medellin also had one week to ten days off twice a year, once in spring and once in fall, coinciding with the Jewish holidays of Passover and Sukkot.  In the winter months, Medellin finished work on Fridays at or around 2:00 p.m. or 3:00 p.m., rather than 5:00 p.m.

41.     Throughout his employment, Defendants paid Plaintiff Medellin his wages by check.

42.     From approximately January 2012 until on or about September 2012, Defendants paid Plaintiff Medellin $10.25 per hour, and $15.38 per hour for some overtime hours, but only for some of the hours he worked, usually only 34 hours per week.

43.     From September 2012 until on or about February 2013, Defendants paid Plaintiff Medellin $11.25 per hour, and $16.88 for some overtime hours, but only for some of the hours he worked, and usually less than 40 hours.

44.     From February 2013 through on or about June 2014, Defendants paid Plaintiff Medellin $12.00 per hour, and $18.00 per hour for some overtime hours, but only for some of the hours he worked, and usually less than 40 hours.

45.     From July 2014 through on or about August 2015, Defendants paid Plaintiff Medellin $13.50 per hour, and $20.25 for some overtime hours, but only for some of the hours he worked, and usually less than 40 hours.

46.     From August 2015 through February 2016, Defendants paid Plaintiff Medellin $14.25 per hour, and $21.38 for some overtime hours, but only for some of the hours he worked, and usually less than 40 hours.

47.     From February 2016 through on or about October 10, 2016, Defendants paid Plaintiff Medellin $15.00 per hour and $22.50 per hour for some overtime hours, but only for some of the hours he worked, and usually less than 40 hours.

48.     Plaintiff Medellin was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

49.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Medellin regarding overtime and wages under the FLSA and NYLL.

50.     Defendants did not provide Plaintiff Medellin an accurate statement of wages, as required by NYLL 195(3).

51.     In fact, Defendants adjusted Plaintiff Medellin's paystubs so that they reflected a false lower amount of wages and hours worked.

52.     Defendants did not give any notice to Plaintiff Medellin, in English and in Spanish (Plaintiff Medellin's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

53.     Defendants required Plaintiff Medellin to purchase "tools of the trade" with his own funds—including fifteen boots, four pairs of gloves and thirty masks.

*Plaintiff Fernando Mejia*

54.     Plaintiff Mejia was employed by Defendants from approximately September 2016 until on or about December 25, 2017.

55.     Defendants employed Plaintiff Mejia as a construction worker and ceramic/tiles installer.

56.     Plaintiff Mejia regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

57.     Plaintiff Mejia's work duties required neither discretion nor independent judgment.

58.     Throughout his employment with Defendants, Plaintiff Mejia regularly worked in excess of 40 hours per week.

59.     From approximately September 2016 until on or about December 25, 2017, Plaintiff Mejia worked as a construction worker and ceramic/tiles installer from approximately 8:00 a.m. until on or about 7:00 p.m. to 8:00 p.m., four days a week and from approximately 8:00 a.m. until on or about 9:00 p.m. to 10:00 p.m., one day a week (typically 57 to 62 hours per week).

60.     Mejia did not work this exact schedule every single week.  There were weeks when his schedule differed.  For example, Mejia did not work on some federal holidays and some Jewish holidays.  Mejia also had one week to ten days off twice a year, once in spring and once in fall, coinciding with the Jewish holidays of Passover and Sukkot.  In the winter months, Mejia finished work on Fridays at or around 2:00 p.m. or 3:00 p.m., and on summer months he finished work on Fridays at our around 5:00 p.m. or 6:00 p.m.

61.     From approximately September 2016 until on or about November 2016 and from approximately November 2017 until on or about December 25, 2017, Defendants paid Plaintiff Mejia his wages by check.

62.     From approximately November 2016 until on or about November 2017, Defendants paid Plaintiff Mejia his wages in cash.  He was typically paid in cash through payments to another employee.  Defendants would pay another employee additional money by check, and direct that employee to pay the amount to Mejia.  Defendants engaged in this scheme rather than pay Mejia directly for his work.

63.     From approximately September 2016 until on or about November 2016, Defendants paid Plaintiff Mejia at the rate of $13 per hour, but only for some of the hours he worked, and less than 40 hours.

64.     From approximately November 2016 until on or about November 2017, Defendants paid Plaintiff Mejia a fixed salary of $100 per day.

65.     From approximately November 2017 until on or about December 25, 2017, Defendants paid Plaintiff Mejia a fixed salary of $510 per week ($15 per hour for only 34 hours).

66.     Plaintiff Mejia's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

67.     In fact, Defendants required Plaintiff Mejia to work a variety of additional hours past his scheduled departure time every day, and did not pay him for the additional time he worked.

68.     Plaintiff Mejia was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

69.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mejia regarding overtime and wages under the FLSA and NYLL.

70.     Defendants did not provide Plaintiff Mejia an accurate statement of wages, as required by NYLL 195(3).

71.     In fact, Defendants adjusted Plaintiff Mejia's paystubs so that they reflected a false lower amount of wages and hours worked.

72.     Defendants did not give any notice to Plaintiff Mejia of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

73.     Defendants required Plaintiff Mejia to purchase "tools of the trade" with his own funds—including grinders, fifty packs of gloves and twenty packs of masks.

*Plaintiff Moises Perez Aguirre*

74.     Plaintiff Perez was employed by Defendants from approximately October 2013 until on or about January 2, 2018.

75.     Defendants employed Plaintiff Perez as a ceramic installer.

76.     Plaintiff Perez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

77.     Plaintiff Perez's work duties required neither discretion nor independent judgment.

78.     Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

79.     From approximately October 2013 until on or about November 2016, Plaintiff Perez worked as a ceramic installer from approximately 7:00 a.m. until on or about 6:00 p.m. to 7:00 p.m., Sunday through Thursday, and from 7:00 a.m. until 5:00 p.m. or 6:00 p.m. in summer months, and until 2:00 p.m. or 3:00 p.m. in winter months, on Fridays.  (typically 62 to 71 hours per week).

80.     From approximately December 2016 until on or about January 2, 2018, Plaintiff Perez worked as a ceramic installer from approximately 7:00 a.m. until on or about 8:00 p.m., Sunday through Thursday, and from 7:00 a.m. until 5:00 p.m. or 6:00 p.m. in summer months, and until 2:00 p.m. or 3:00 p.m. in winter months, on Fridays.  (typically 72 to 76 hours per week).

81.     Perez did not work this exact schedule every single week.  There were weeks when his schedule differed.  For example, Perez did not work on some federal holidays and some Jewish holidays.  Perez also had one week to ten days off twice a year, once in spring and once in fall, coinciding with the Jewish holidays of Passover and Sukkot.

82.     Throughout his employment, Defendants paid Plaintiff Perez his wages by check, except for his first two months when he was paid by cash.

83.     From approximately October 2013 through December 2013, Defendants paid Plaintiff Perez a fixed salary of $110 per day.

84.     From January 2014 until March 2015, Defendants paid Perez $13.00 per hour and $19.50 per hour for some overtime hours, but did not pay him for all the hours he actually worked.

85.     From March 2015 until March 2016, Defendants paid Perez $15.75 per hour and $23.63 per hour for some overtime hours, but did not pay him for all the hours he actually worked.

86.     From March 2016 through January 2, 2018, Defendants paid Perez $18.00 per hour and $27.00 per hour for some overtime hours, but did not pay him for all the hours he actually worked.

87.     While Perez's checks sometimes indicated greater amounts of pay, that additional pay did not go to Perez.  Rather, Perez was required to pay other employees of Defendants in cash from the additional amounts he received in his check.  This was done at the insistence of Defendants, who did not want to pay these additional employees directly themselves.

88.     Plaintiff Perez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

89.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

90.     Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

91.     In fact, Defendants adjusted Plaintiff Perez's paystubs so that they reflected a false lower amount of wages and hours worked.

92.     Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

93.     Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including six pairs of gloves each week, ten drills, five ceramic cutters, ten grainers, five packs of sponges and eight shovels and metals for cement.

*Defendants' General Employment Practices*

94.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

95.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked...

96.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

97.      Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

98.      Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

99.      Defendants paid Plaintiffs their wages either in cash or by checks that showed a false lower amount of hours worked.

100.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

101.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

102.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

103.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

104.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum

wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

105.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

106.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

107.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

108.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

109.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

110.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

111.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

112.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

113.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate.

114.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

115.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

116.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

117.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

118.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

119.    Plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

120.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

121.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

122.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

123.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

124.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

125.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

126.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

127.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

128.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

129.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

130.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

131.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

132.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

133.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

134.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

135.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

136.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

137.     Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(k)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(l)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(m)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(n)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(o)      Awarding Plaintiffs the expenses incurred in this action, including costs and attorneys' fees;

(p)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(q)      All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
          April 26, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____/s/ Michael Faillace_____
          Michael Faillace [MF-8436]
          60 East 42nd Street, Suite 4510
          New York, New York 10165
          Telephone: (212) 317-1200
          Facsimile: (212) 317-1620
          *Attorneys for Plaintiffs*